FILED-EO4

04 JUL 14 PH 3:09

CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW MAX,                          )
                                      )
            Plaintiff,                )        No. 04C 4617
                                      )
        v.                            )
                                      )        JURY TRIAL DEMANDED
MAYTAG CORPORATION,                   )
                                      )        JUDGE RONALD GUZMAN
            Defendant.                )
                                               MAGISTRATE JUDGE NOLAN

COMPLAINT

Plaintiff Matthew Max complains against defendant Maytag Corporation as follows:

Jurisdiction and Venue

DOCKETED

JUL 1 5 2004

1.      This is an age discrimination case brought pursuant to the provisions of the Age

Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §621 *et seq.* The Court has

jurisdiction pursuant to 29 U.S.C. §§626(c) and 626(d) and 28 U.S.C. §1337.

2.      Plaintiff Matthew Max filed a timely charge of age discrimination with the Equal

Employment Opportunity Commission ("EEOC") on or about May 18, 2001. Plaintiff has filed

this lawsuit more than sixty days after filing his charge of discrimination.

3.      After the EEOC completed its investigation, the agency issued a determination on

or about August 21, 2002 that there is "reasonable cause" to believe that Maytag discriminated

against Max by demoting him and by not selecting him for a Regional Manager position in

violation of the ADEA. The EEOC further determined that there is "reasonable cause" to

believe that Maytag discriminated against a class of employees, age 50 and older, by demoting
them in violation of the ADEA.

4.      The parties unsuccessfully attempted to conciliate and to settle this matter.
The parties' settlement negotiations reached a standstill in mid-December 2003.

5.      Venue is proper in this District because all parties either reside or do business
here.

Parties

6.      Plaintiff Matthew Max is a resident of Wayne, Illinois.  He is 62 years old.
Plaintiff was hired by Maytag Corporation on January 1, 1970.  He remains employed at Maytag
through the present.

7.      Defendant Maytag Corporation is a for-profit corporation with
headquarters in Newton, Iowa.  Maytag has business locations in Chicago and throughout the
United States.  Maytag is an employer as the term "employer" is defined in the ADEA, 29 U.S.C.
§630(b).

Claim for Relief

8.      Max began working for Maytag on or about January 1, 1970.  Max was initially
employed as a trainee in Maytag's sales program at Newton Iowa.   In or about March 1970, after
this initial training period ended, Maytag assigned Max to serve as a District Manager in a sales
district in Kalamazoo Michigan.

9       Between 1970 and 1989, Maytag promoted and assigned Max to a series of larger
sales districts.  During this time, Maytag rated Max's performance on an annual basis as "fully

-2-

meets" requirements/expectations.

10.     In or about November 1989, Maytag promoted Max to the position of Regional Manager for the Cleveland Region.   At the time of Max's promotion, the Cleveland Region was not meeting its sales quota.  Under Max's leadership, the Cleveland Region exceeded its sales quota for four consecutive years (1991-1994).   During the time that Max served as Regional Manager in Cleveland, Maytag rated Max's performance on an annual basis as "fully meets" requirements/expectations.

11.     In or about October 1994, Maytag promoted Max to the position of Regional Manager for the Chicago Region.  Under Max's leadership, Chicago Region sales increased and the Region exceeded its sales quota in 1997, 1998, and the first quarter of 1999.  Prior to 1997, the Chicago Region had not attained its sales quota for twelve years.

12.     Maytag rated Max's performance on an annual basis as "fully meets" requirements/expectations for years 1994 through 1998.

13.     Maytag uses an evaluative tool known as a 360° Review to help assess the performance of its executives.  When undergoing a 360° Review, Maytag executives are rated on a 1-5 scale (with 5 being the highest) on 15 core competency areas by 5 direct reports, 5 peers, and by their direct supervisor.   Maytag expected for its managers to work to improve their effectiveness in any area in which they received a rating under "3".

14.     Maytag performed a "360° Review" on Max that was completed on or about March 31, 1998.  In this review, Max received an average rating of greater than "3" on each of the 15 core competency areas on which he was assessed.

15.     Maytag rated Max's performance on an annual basis as "fully meets"

requirements/expectations in January 1999 and it raised his salary from $106,800 to $113,500.

16. As of January 1999, Maytag's Appliance Sales Division was organized into twenty-two Regions. Each Region had a Regional Manager and varying numbers of District Managers, who are responsible for directly calling on Maytag's retail and wholesale customers.

17. In April 1999, Maytag reorganized its Appliance Sales Division by reducing the number of Regions to nine (from twenty-two) and by creating a new Zone Operations Manager position between the position of Regional Manager Field Operations and District Manager. Maytag's April 1999 reorganization is hereinafter referenced as the "1999 reorganization".

18. Maytag interviewed Max but did not select him for the position of Regional Manager Field Operations in the new organizational structure. Instead, Maytag assigned Max – with no change in compensation – to the Zone Operations Manager position for the Chicago Zone.

19. Of the nine persons that Maytag selected for the Regional Manager Field Operations position, seven (aged 33, 35, 44, 44, 45, 45, and 46) were at least eleven years younger than Max, who was 57 at the time, and another person was (at age 49) eight years younger than Max.

20. Prior to the April 1999 reorganization, at least eight of Maytag's twenty-two Regional Managers (including Max) were over 50 years-old. Despite this, Maytag selected only one person over 50 years old (namely, Bob Carr) for the position of Regional Manager Field Operations in the post-April 1999 Appliance Sales organization.

21. Bob Carr was a close business and social friend of one of the Maytag executives (Leo Lavota) who served on the panel that selected the persons to fill the position of Regional

-4-

Manager Filed Operations.

22.     Prior to the April 1999 reorganization, the Regions for which Carr was in charge as Regional Manager (namely, the Houston Region and then the Dallas Region) did not make their sales quotas.  By contrast, the Chicago Region for which Max served as Regional Manager exceeded its sales quota in 1997, 1998, and the first quarter of 1999.

23.     Max was not selected by Maytag for the position of Regional Manager Field Operations because of his age.

24.     Maytag selected a 33 year-old named Greg Hewitt (date of birth: 4/24/65) to serve as the Regional Manager Field Operations for the Chicago Region in the post-April 1999 organization.  Hewitt had never held the position of Regional Manager prior to this promotion. The Chicago Region included the Chicago Zone (for which Max was responsible) and the Minneapolis Zone (for which fifty-two year-old Roger Evenson was responsible).

25.     Hewitt selected the even younger Greg Heyer (date of birth: 11/25/66) for the position of  human resources organizational effectiveness consultant for the Chicago Region.

26.     Max and Evenson began reporting to Hewitt in or about April 1999.

27.     In the first quarter of 1999, the Chicago Zone (for which Max was responsible) had sales over 100% of its sales quota.

28.     Despite this, Hewitt (with Heyer's input) placed Max on a performance improvement plan ("PIP") in June 1999.

29.     Max was placed on a PIP by Maytag because of his age.

30.     Following the 1999 reorganization, both Hewitt and Heyer made a series of comments during the remainder of 1999 which reflected their stereotypic notions about the

-5-

abilities of older, long-service employees and which evidenced their bias against such older

workers. Examples of these derogatory comments include:

a.  Hewitt directly referred to Dave Vovos (date of birth: 1/06/39) and Jerry Klister (date of birth: 1/17/40), two of the oldest District Managers in the Chicago Region) as "wringer washer merchandisers;"

b.  Hewitt repeatedly expressed his concern that the older members of the sales team in the Chicago Region were not adept at becoming computer literate. In particular, Hewitt stated that Jerry Klister, then almost 60, would have a "problem" handling the new sales procedures - - which were computer-focused - - on account of his age. Hewitt also expressed his concern about Klister's computer skills. Hewitt did not make such comments about younger members of the sales team;

c.  Heyer referred to Klister as a "dinosaur with a computer";

d.  Hewitt told Evenson (who was then in his early 50s) that you "old guys" have to change your old ways during a discussion between them regarding business strategy;

e.  when discussing whether to retain the 52 year-old Keith Thorsen (date of birth: 8/7/46) or the 24 year-old Heather Eccles (date of birth: 6/12/74), Hewitt stated that he wanted someone younger who had more of a future and expressed a preference for Eccles;

f.  at a retirement party for senior Maytag employee, Heyer listened to stories that other employees were telling regarding the retiree and her career and stated sarcastically the he wasn't even born yet when those stories took place;

g.  Hewitt stated that he could beat Jerry Pribanic (who was approximately 50 years old) in handball because "he's an old guy"; and

h.  Hewitt stated that it was good that a certain older dealer was retiring because a younger dealer would be better for business.

31.  Hewitt indicated to Max that placing Max on the PIP was part of a company-wide

initiative because the company had gotten off to a more difficult start with the new regions.

Hewitt also indicated to Max that he had also placed his other Zone Manager for Operations

(fifty-two year-old Roger Evenson) on a PIP.

32.    On information and belief, Maytag did not have a company-wide initiative to place its Zone Managers for Operations on performance improvement plans.

33.    Throughout the remainder of 1999, Hewitt told Max on numerous occasions that the Chicago Region was outperforming the other regions in terms of sales.

34.    Hewitt ended Max's PIP effective December 1999.

35.    On or about January 1, 2000, Maytag announced the final standings for the store cruise contest. The Chicago Region ranked third amongst the nine regions in sales.

36.    In early 2000, Maytag awarded Max a $22,042 bonus pursuant to its incentive compensation plan based on his sales performance in 1999. Max attained 100% of his individual performance goal while the company as a whole did not deliver its 1999 objectives and attained only 80.4% of its financial and strategic goals.

37.    Maytag attributed its subpar financial performance in 1999 to a significant increase in warranty expense, to operating inefficiencies in its plants and across its entire business, and to market share decline

38.    Despite the fact that Max's performance in 1999 was good enough to earn a 25% bonus in a year in which the company as a whole did not achieve its objectives, Hewitt issued Max a performance review for 1999 which rated Max as "partially meeting" requirements/expectations. This was the first such rating that Max had received in his twenty-nine years with the company.

39.    Heyer also provided input into Max's 1999 performance review.

40.    Max received a lower raise following his 1999 evaluation than he would have

received had he been evaluated by Maytag as "fully meeting" expectations/requirements.

41      In assessing the performance of an individual within its Appliance Sales Division, Maytag has traditionally considered to be important a number of measures pertaining to that individual's sales performance. Maytag, for example, has compared the sales performance of that individual to the sales performance of his/her peers, either as against other individuals or a group average. Maytag has also compared the actual sales performance of that individual to his/her sales quota for the year

42.      Hewitt's assessment of Max's 1999 performance as "partially meeting" expectations is irreconcilably inconsistent with the methods by which Maytag has traditionally measured performance.

43.      Max received his 1999 performance review from Maytag because of his age.

44.      In early 2000, the District Manager responsible for the Madison District (Ron Jensen) became ill and was unable to effectively cover his territory. Max, with Hewitt's approval, voluntarily covered Jensen's District between February and August 2000 while at the same time maintaining his responsibilities as the Zone Manager of Operations for the Chicago Zone as a whole.

45.      Max covered Jensen's territory so effectively that Jensen earned a bonus based upon sales that were made in his District during the time that he was off work on medical leave.

46.      In mid-2000, Maytag decided to reorganize its Appliance Sales Division. In the new structure, the Division would move from having nine regional offices to having four customer support centers. Each customer support center would have two Regional Managers, one for national accounts and one for independent dealers. Maytag eliminated the position of

-8-

Zone Manager of Field Operations in this restructuring. This reorganization by Maytag (hereinafter referenced as the "2000 reorganization") became effective on or about July 31, 2000.

47. On or about July 20, 2000, prior to the effective date of the 2000 reorganization, Max sent an e-mail to Hewitt and to Greg Heyer in which he indicated his interest in being considered for any regional management positions in the upcoming reorganization. Later that same day, Hewitt responded to Max's e-mail and indicated that "[w]e will be in touch with you hopefully next week."

48. Maytag soon got back "in touch" with Max and demoted him from Zone Manager of Field Operations to District Manager effective August 1, 2000. As part of this demotion, Maytag stripped Max of his supervisory responsibilities and slashed his salary by 25% (from $114,600 to $86,000).

49. Max and Evenson, both of whom reported directly to Hewitt, were the only Zone Managers of Field Operations to have their salary reduced after the 2000 reorganization.

50. Maytag's decision to demote Max further deprived him of the opportunity to earn year-end annual bonuses and stock options for years 2001 and beyond.

51. Max was demoted by Maytag and not selected for a Regional Manager position because of his age.

52. Notwithstanding the fact that it demoted him and reduced his salary, Maytag rated Max's performance for year 2000 as "fully meets" requirements/expectations.

53. In early 2001, Maytag was planning for yet another reorganization of the Appliance Sales Division. Under this reorganization (hereinafter referred to as the "2001 reorganization"), which became effective in or about May or June 2001, the Appliance Sales

Division was restored to having approximately twenty to twenty-one Regions. Each Region had a Regional Manager and varying numbers of District Managers.

54.     On or about January 15, 2001, Max submitted a letter to Hewitt and other Maytag executives to apply for one of the new Regional Manager positions.   In this letter, Max summarized his qualifications and indicated his ability to relocate if were necessary in order for him to receive a promotion.

55.     Despite its need for additional Regional Managers and Max's stellar qualifications and expression of interest, Maytag refused to even interview him for one of the newly created Regional Manager positions.

56.     In or about April 12, 2001, Max requested a written response as to why he was not even given an opportunity to interview for a Regional Manger position.

57.     Maytag never provided Max with any explanation, let alone a written one, as for why Maytag did not interview him for the Regional Manager position.

58.     Maytag filled the new Regional Manager positions created as a consequence of the 2001 reorganization with individuals who were younger (and in most instances substantially younger) and far less experienced than Max.

59.     Max was refused an interview and not selected by Maytag for the position of Regional Manager because of his age.

60.     On account of Maytag's failure to promote him (and even to interview him for a promotion), Max has remained in the District Manager/National Accounts position since the 2001 reorganization took place.  The District Manager/National Accounts position is typically staffed by newly hired sales employees.

-10-

61. Max has continued to diligently and effectively perform his duties for Maytag. In 2001, 2002, and in 2003, Maytag rated Max's performance as "fully meeting" expectations/requirements.

62. By taking the age-based adverse actions specified in this complaint, Maytag acted in willful violation of the ADEA.

63. As a result of Maytag's age-based adverse actions, Max has lost substantial salary and employment-related benefits

WHEREFORE, plaintiff Matthew Max prays that this Court:

(a) award plaintiff damages in the amount of all salary, bonuses, stock options, and other benefits lost;

(b) award plaintiff an equal amount as liquidated damages;

(c) order plaintiff reinstated to the position of Regional Manger with full restoration of all job-related benefits;

(d) award plaintiff all costs, including a reasonable attorney's fee;

(e) award plaintiff pre-judgment interest; and

(f) award such other relief as the Court deems just.

Respectfully submitted,

_____

Jeffrey I. Cummings, One of the
Attorneys for Plaintiff

Jeffrey I. Cummings
Marni Willenson
MINER, BARNHILL & GALLAND
14 West Erie Street
Chicago, IL 60610
(312) 751-1170

-11-

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

# __Civil Cover Sheet__

#2  FILED-ED4
'04 JUL 14 PH 3: 09
CLERK COURT

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use __only__ in the Northern District of Illinois.

| | |
|---|---|
| **Plaintiff(s): Matthew Max** | **Defendant(s):Maytag Corporation** |
| County of Residence: | County of Residence: |
| Plaintiff's Atty: Jeffrey I. Cummings<br>Miner, Barnhill & Galland<br>14 West Erie Street, Chicago,<br>IL 60610<br>(312) 751-1170 | Defendant's Atty: |

DOCKETED
JUL 1 5 2004

# 04C 4617

**II. Basis of Jurisdiction:**     **3. Federal Question (U.S. not a party)**

**III. Citizenship of Principal Parties (Diversity Cases Only)**
Plaintiff:- **N/A**
Defendant:- **N/A**

JUDGE RONALD GUZMAN

MAGISTRATE JUDGE NOLAN

**IV. Origin :**     **1. Original Proceeding**

**V. Nature of Suit:**     **442 Employment**

**VI.Cause of Action:**     **This is an age discrimination case brought pursuant to the provisions of the Age Discriminaton in Employment Act, 29 U.S.C. Sec. 621 et seq. The Court has jurisdiction pursuant to 29 U.S.C. Secs. 626(c) and 28 U.S.C. Sec. 1337**

**VII. Requested in Complaint**
Class Action: **No**
Dollar Demand: **Compensatory damages, fees and costs**
Jury Demand: **Yes**

**VIII.** This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____

Date: _____7/14/04_____

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it.

1-1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

MATTHEW MAX

v. MAYTAG CORPORATION

FILED-ED4

04 JUL 14 PM 3: 09

CLERK
U.S. DISTRICT COURT

Case Number 04C 4617



APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff MATTHEW MAX

JUDGE RONALD GUZMAN

MAGISTRATE JUDGE NOLAN

| (A) | | | (B) | | |
|---|---|---|---|---|---|
| SIGNATURE | | | SIGNATURE | | |
| NAME Jeffrey I. Cummings | | | NAME Marni Willenson | | |
| FIRM Miner, Barnhill & Galland | | | FIRM Miner, Barnhill & Galland | | |
| STREET ADDRESS 14 West Erie Street | | | STREET ADDRESS 14 West Erie Street | | |
| CITY/STATE/ZIP Chicago, IL 60610 | | | CITY/STATE/ZIP Chicago, IL 60610 | | |
| TELEPHONE NUMBER 312-751-1170 | FAX NUMBER 312-751-0438 | | TELEPHONE NUMBER (312) 751-1170 | FAX NUMBER 312- 751-0438 | |
| E-MAIL ADDRESS jcummings@lawmbg.com | | | E-MAIL ADDRESS mwillenson@lawmbg.com | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6195523 | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6238365 | | |
| MEMBER OF TRIAL BAR? | YES ■ | NO ☐ | MEMBER OF TRIAL BAR? | YES ■ | NO ☐ |
| TRIAL ATTORNEY? | YES ■ | NO ☐ | TRIAL ATTORNEY? | YES ■ | NO ☐ |
| | | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |
| (C) | | | (D) | | |
| SIGNATURE | | | SIGNATURE | | |
| NAME | | | NAME | | |
| FIRM | | | FIRM | | |
| STREET ADDRESS | | | STREET ADDRESS | | |
| CITY/STATE/ZIP | | | CITY/STATE/ZIP | | |
| TELEPHONE NUMBER | FAX NUMBER | | TELEPHONE NUMBER | FAX NUMBER | |
| E-MAIL ADDRESS | | | E-MAIL ADDRESS | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | TRIAL ATTORNEY? | YES ☐ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |