IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW MAX and )
UNITED STATES EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
) Judge Ronald A. Guzmán
Plaintiffs, )
v. ) 04 C 4617
)
MAYTAG CORPORATION, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Matthew Max and the U.S. Equal Employment Opportunity Commission ("EEOC") have sued Maytag Corp. for age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). Before this Court is Maytag's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1)[1] and 12(b)(6). For the reasons provided in this Memorandum Opinion and Order, the Court denies the motion.

## FACTS

Max began working for Maytag on or about January 1, 1970. (Consol. Am. Compl. ¶ 7.) In March 1970, Maytag assigned Max to serve as District Manager in a sales district in Kalamazoo, Michigan. (*Id.* ¶ 7.) Between 1970 and 1989, Max was awarded larger sales

---

[1] Maytag is mistaken in its belief that the requirements of a timely filed charge and the EEOC's conciliation effort prior to filing suit are jurisdictional prerequisites. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395 n.11 (1982) (stating "the 'charge' requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA"); *Flowers v. Local No. 6, Laborers Int'l Union of N. Am.*, 431 F.2d 205, 207 (7th Cir. 1970) (stating "conciliation efforts by the EEOC are not jurisdictional prerequisites to a judicial action"). Thus, the Court limits its discussion to Maytag's Rule 12(b)(6) motion.

districts and annually rated as fully meeting requirements and expectations. (*Id.* ¶ 8.) In November 1989, Max was promoted to Regional Manager for the Cleveland Region. (*Id.* ¶ 9.) In October 1994, Max was again promoted, this time to Regional Manager for the Chicago Region. (*Id.* ¶ 10.) From 1970 through January 1999, Max received annual ratings of fully meeting requirements. (*Id.* ¶¶ 8, 9, 14.)

In April 1999, Maytag began a reorganization, reducing the number of regions from twenty-two to nine. (*Id.* ¶ 16.) Also, as part of this reorganization, the position of Zone Manager was created to serve between Regional Manager and District Manager. (*Id.*) Max interviewed, but was not selected, for the Regional Manager position. (*Id.* ¶ 17.) Max was assigned as Zone Manager. (*Id.*)

Of the people selected as Regional Managers, one was aged 33, another 35, two others 44, two others 45, one 46, one 49, and one over 50. (*Id.* ¶ 18.) Max was 57 at the time of the reorganization. (*Id.*)

Under the 1999 reorganization, Greg Hewitt, aged 33, was given the position of Regional Manager for Chicago. (*Id.* ¶ 23.) Max along with Roger Evenson, aged 52, served as Zone Managers under Hewitt. (*Id.*) Even though Max's region achieved its sales quota, Hewitt and Heyer placed Max on a performance improvement plan ("PIP") in June 1999. (*Id.* ¶ 27.)

Hewitt informed Max that the reason for his being put on a PIP was due to a company-wide initiative. (*Id.* ¶ 30.) Plaintiffs allege that there was no company-wide initiative. (*Id.* ¶ 31.) Hewitt ended Max's PIP in December 1999. (*Id.* ¶ 33.) Plaintiffs further allege that Hewitt and Heyer made a series of discriminating comments regarding age in 1999. (*Id.* ¶ 29.)

In 1999, Max earned a 25% bonus, passing his individual goal and achieving sales growth at a higher rate than the company rate. (*Id.* ¶ 37.) In a performance review for that same

year, Max was rated as partially meeting requirements and expectations. (*Id.*)

In mid-2000, there was another reorganization in which the nine regions were divided into four customer support centers. (*Id.* ¶ 45.) The position of Zone Manager was eliminated. (*Id.*) Each customer center had two Regional Managers. (*Id.*) Max was not interviewed for either of the Regional Manager positions and was switched to District Manager with a 25% reduction in salary. (*Id.* ¶ 47.) Max and Evenson were the only Zone Managers to receive a reduction in salary. In 2000, Max received a rating of fully meeting requirements and expectations. (*Id.* ¶ 48.)

In early 2001, Maytag went through yet another reorganization, and this time it went back to having twenty to twenty-one regions, with each region having a Regional Manager. (*Id.* ¶ 52.) Max applied, but was not interviewed, for any of the Regional Manager positions. (*Id.* ¶¶ 53-54.) The majority of new Regional Managers were substantially younger than Max. (*Id.* ¶ 57.) Max remained in the District Manager position, and he was rated as fully meeting requirements in 2001, 2002, and 2003. (*Id.* ¶ 60.)

On May 18, 2001, Max filed a charge of age discrimination with the EEOC. Max's charge stated:

> I was hired by the above Respondent on January 1, 1970, as District Manager. In 1989, I was promoted to Regional Manager. In April 1999, I was demoted to Zone Manager, without change in pay, due to restructuring. In June 2000, it was announced that the Zone Manager position would be eliminated. On July 21, 2000, I inquired about a Regional Manager Field Operations position, if any were available; or a Maytag Home Appliance Center District Manager position. On or about August 1, 2000, I was demoted to District Manager over retail accounts with a substantial reduction in salary. On January 15, 2001, I applied for a regional Manager Position. I was not given an interview, consequently, I was not selected for any of the available positions. I believe I was discriminated against because of my age, 59 (date of birth: September 7, 1941), in violation of the Age Discrimination in Employment Act of 1967, as amended.

(Mot. Dismiss, Ex. A, EEOC Charge at 2.)

Plaintiffs allege Maytag discriminated against Max and a class of employees over the age of fifty by: (1) demoting them from Regional Sales Managers to Zone Managers; (2) failing to reinstate them to Regional Sales Managers; and (3) demoting them to District Manager. (Consol. Am. Compl. ¶ 63.) Plaintiffs seek an injunction prohibiting Maytag from participating in age-based discrimination regarding promotions, demotions, policies, practices and programs. (*Id.* ¶ 65.) Further, Max and putative class members seek front pay, back pay, prejudgment interest, lost benefits, liquidated damages, as well as attorney's fees and costs. (*Id.*)

## DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Dismissal should be granted only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). First, Maytag argues that the EEOC's claims for individual relief on behalf of individuals other than Max must be dismissed because they never filed charges of discrimination. The Court disagrees.

"Congress did not intend to require that every individual who files a suit under ADEA also must have filed an individual charge." *Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008, 1016 (7th Cir. 1988). Individuals who have not filed timely EEOC charges may piggyback onto another individual's timely filed charge where the timely filed charge "alleged class-wide discrimination or . . . claimed to represent a class of employees." *EEOC v. N. Gibson*

4

*Sch. Corp.*, 266 F.3d 607, 620 n.9 (7th Cir. 2001). However, the charge need not include an "explicit mention that a representative action is contemplated." *Anderson*, 852 F.2d at 1017. The question is whether any allegation in a timely filed charge serves to "inform and give notice to the employer that the consequences of an individual plaintiff's charge may 'transcend[] an insolated [sic] individual claim.'" *Kloos v. Carter-Day Co.*, 799 F.2d 397, 400-02 (8th Cir. 1986) (quoting *Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 759-60 (9th Cir. 1979)) (quotations omitted); *see Andersen*, 852 F.2d at 1017 (citing *Kloos* with approval).

Based on the particular facts before the Court, Max's EEOC charge sufficiently informed and gave notice to Maytag that he alleged age discrimination that went beyond his individual claim. Max clearly alleged in his charge that Maytag underwent restructuring that effected the Regional Manager, Zone Manager and District Manager positions. Further, he alleged that the Zone Manager position was eliminated. Maytag cannot reasonably argue that it was unaware that employees other than Max had held the position of Zone Manager at the time of its elimination. That Max's charge triggered the EEOC's request of information from Maytag regarding the pertinent data, including age, of all Regional Managers, Zone Operations Managers, and District Managers shows a possible set of facts upon which Max may state a claim. For if Max's charge was sufficient to inform the EEOC of class-wide age discrimination, it surely was sufficient to inform and give notice to Maytag that he alleged class-wide discrimination.

Second, Maytag argues that the Court must dismiss claims that arose prior to July 23, 2000 because Max failed to file a timely charge as to such events. In Illinois, as a general rule "an ADEA plaintiff must file an EEOC charge 'within 300 days after the alleged unlawful practice occurred.'" *Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 603 (7th Cir.

1992) (quoting 29 U.S.C. § 626(d)(2)). *But see Anderson*, 852 F.2d at 1016 (explaining piggybacking exception). "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). A plaintiff may establish a continuing violation by showing that: (1) "the employer's decision-making process occurred over time;" (2) "the employer has in place an express, openly espoused policy that is alleged to be discriminatory;" or (3) "an employer covertly follows a practice of discrimination over a period of time." *Flemming v. United Parcel Serv.*, No. 03 C 9391, 2004 WL 2314962, at *3 (N.D. Ill. Oct. 12, 2004); *see Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002).

Contrary to Maytag's assertions, plaintiffs have not pleaded themselves out of court with regard to claims based on events that occurred prior to July 23, 2000. Plaintiffs do not plead at what time Max knew Maytag discriminated against him based on age. Reading all facts alleged in the complaint in plaintiffs' favor, as well as all reasonable inferences drawn therefrom, plaintiffs allege that Maytag covertly followed a practice of discrimination over a period of time and even actively took steps to prevent plaintiffs' from obtaining information bearing on the existence of their claims. Thus, based on these allegations, discovery may reveal that Max and those similarly situated would not reasonably have been aware of the fact until much later that Maytag covertly utilized the restructuring process over time to discriminate based on age. Therefore, the Court denies Maytag's motion to dismiss based on this ground.

Third, Maytag argues that the EEOC's claims on behalf of individuals other than Max must be dismissed with prejudice because the EEOC failed to fulfill its statutory obligation of conciliation before filing a lawsuit. As discussed above, the failure to conciliate is not a jurisdictional prerequisite. *Flowers*, 431 F.2d at 207. Thus, Maytag's motion is more

appropriately brought under Rule 12(b)(6) motion. On a Rule 12(b)(6) motion, "documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *see Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Thus in ruling on this Rule 12(b)(6) motion, the Court considers Max's EEOC charge, but not Kim Miller's affidavit, the Letter of August 10, 2001 from Percile Bryant to Miller, the Letter of September 17, 2002 from John Rowe to Miller, Angela Williams' affidavit, the EEOC's Determination of August 21, 2002, the EEOC's press release of July 15, 2003, or Bryant's declaration. *See E.E.O.C. v. Harvey L. Walner & Assocs.*, No. 95 C 1355, 1995 WL 470233, at *2 (N.D. Ill. Aug. 7, 1995), *aff'd*, 91 F.3d 963, 972 (7th Cir. 1996) (stating evidence of failure of conciliation are outside of pleadings and not central to EEOC's discrimination claims).

Moreover, plaintiffs allege that there was an attempt at conciliation, and it was rejected. (Consol. Am. Compl. ¶ 6.) For the purposes of this motion, this Court must accept this factual allegation as true. In addition, as discussed above, Maytag had notice that the consequences of Max's EEOC charge transcended his individual claim. Discovery may establish that the EEOC did not in fact fulfill its obligation to conciliate. However, given the liberal notice pleading standard, it would be inappropriate for the Court to hold that the EEOC failed to conciliate at this early stage of the litigation. Thus, Maytag's motion to dismiss the EEOC's claims on behalf of individuals other than Max, for failure to conciliate, is denied.

## CONCLUSION

For the foregoing reasons, this Court denies Maytag's motion to dismiss in its entirety [doc. no. 17-1].

**SO ORDERED**  **ENTERED:** 5/12/05

*[signature]*

**HON. RONALD A. GUZMAN**

**United States Judge**